**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **HENRY BENITEZ,** | : | |
| | : | |
| **Plaintiff,** | : | **REPORT AND** |
| | : | **RECOMMENDATION** |
| **- against -** | : | |
| | : | **01 Civ. 0181 (RCC) (RLE)** |
| **C. STRALEY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**To the HONORABLE RICHARD CONWAY CASEY, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* plaintiff, Henry Benitez ("Benitez"), has brought this action pursuant to 42 U.S.C. § 1983, alleging retaliatory acts of thirty-four defendants from the Green Haven Correctional Facility ("Green Haven") and the Attica Correctional Facility ("Attica"), and claiming numerous violations of his constitutional rights. He has apparently served twenty-six of the defendants.[1] These defendants, on behalf of themselves and the unserved defendants, move to dismiss the following claims under Federal Rule of Civil Procedure ("FRCP") 12(b)(6): conspiracy, retaliation, deprivation of property without due process, medical indifference, and violation of procedural due process. Some of the defendants also move to dismiss claims against them for lack of personal involvement and on the basis of qualified immunity. Defendants also move for change of venue. For the reasons stated below, I recommend that defendants' motion be **GRANTED**, in part, and **DENIED**, in part.

---

[1]Defendants' Memorandum of Law indicates that twenty-one of the defendants have been served, but the court record shows executed service receipts for the following twenty-six defendants: Goord, Bartlett, Straley, Decicco, Keysler, Schmitt, Artuz, Totten, Ward, Higley, Selsky, Gunderman, Schneider, Conway, Corcoran, Miller, Morton, Kelly, Bea, Sinicki, Surber, Stiles, Williams, Sparhawk, Tucker, and Dolan.

## II. BACKGROUND

### A.    Factual Background[2]

Benitez, an inmate first at Green Haven and later at Attica, alleges numerous false

misbehavior reports that led to disciplinary actions such as confinement to Special Housing Units

("SHU"), reduction of privileges, and transfer.

### 1.    May 28 and May 29, 1998 Incidents

On May 28, 1998, as he was taking a "bird bath" (washing from the waist down) in his

cell in H-Block, Benitez observed Correctional Officer Straley watching him.  Plaintiff's

Statement of Claim ("Pl. Claim") ¶¶ 1-2.  He stopped Straley to ask whether she announced

"female on the company" when she entered the cellblock.  **Id**. ¶ 3.  Straley told Benitez he could

alert the superintendent if he wanted to complain about a privacy right violation.  **Id**. ¶ 4.  Shortly

thereafter, Straley and Officer Jones entered Benitez's cell, frisked him, and left.  **Id**. ¶ 5.  Two

minutes later, defendants Straley and Sparhawk entered his cell.  **Id**. ¶ 7.  Sparhawk forcibly held

Benitez down while Straley asked "Where is the money?" and forced her fingers into his rectum.

**Id**. ¶¶ 8-9.  The pain was so intense that it caused him to push Sparhawk off the bed, and both

defendants ran out of his cell.  **Id**. ¶¶ 9-10.  Benitez provided Correctional Officers Artuz,

Schneider, Gourd, and Bartlett with a complaint about this incident, but believes that no action

was taken to investigate.  **Id**. ¶ 14.

Straley filed a misbehavior report against Benitez that alleged lewd exposure, solicitation,

---

[2]The factual background is taken from Benitez's Statement of Claim.  For purposes of this motion, the allegations are assumed to be true, *see* **Hishon v. King & Spaulding**, 467 U.S. 69, 73 (1984), and Benitez's allegations will be held to a less stringent standard than a formal pleading drafted by lawyers.  **McEachin v. McGuiness**, 357 F. 3d 197, 200 (2d Cir. 2004); **Haines v. Kerner**, 404 U.S. 519, 520 (1972).

threats, and harassment. **Id**. ¶ 12. In the report, she said she had received an anonymous letter that matched Benitez's handwriting, and that while she was walking in cellblock H, she saw Benitez running a mirror up and down the bars of his cell, and that he was naked from the waist down, and masturbating. **Id**. ¶ 12.

On May 29, 1998, Benitez overheard Straley telling defendants Gunderman and Surber that he had written the anonymous letter, and that she did not want him to remain in H-block. **Id**. ¶ 13. Five minutes later, Gunderman and Surber entered the cell, ordered Benitez off his bed, and frisked him. **Id**. ¶ 15. While Benitez faced an opposite wall, Surber threw Benitez's personal property, including his walkman, onto the floor. **Id**. ¶ 16. Defendant Ward came to the cell, and asked Surber if any contraband had been found. Surber replied that he was going to take Benitez to another area to be strip-searched and confined in the SHU. **Id**. ¶ 17. After the strip search, Benitez was handcuffed, then Gunderman and Surber repeatedly punched and kicked him while Ward placed him in a chokehold. **Id**. ¶¶ 19-20. Benitez was escorted to the prison clinic for treatment of his complaints of pain in his face, body, and throat. **Id**. ¶ 21. Defendant Schmitt then took Benitez to a cell in G-Block where he was confined without a mattress or bed linen. **Id**. ¶ 22. Thereafter, Ward, Surber, and Gunderman filed two misbehavior reports against Benitez, alleging assault, harassment, and refusing direct orders. **Id**. ¶¶ 23-25.

Benitez filed a complaint regarding the incidents with Ward, Surber, and Gunderman. **Id**. ¶ 30. He told his Tier III hearing assistant, defendant Dicicco, that he needed a copy of his misbehavior report, his mirror, and his complaint, but Dicicco did nothing about it. **Id**. ¶ 32. On May 30, 1998, Benitez made another complaint alleging that Ward, Surber, and Gunderman

willfully confiscated his property.[3]  **Id**. ¶ 33.

###  2.  June 1, 1998 Disciplinary Hearing re May 28, 1998 Misbehavior Report

On June 1, 1998, defendant Correctional Officer Totten commenced a disciplinary hearing regarding Benitez's misbehavior report from May 28.  Benitez informed Totten that he had not received the required twenty-four hours notice with respect to the misbehavior report, and thus was unable to adequately prepare his defense.  **Id**. ¶ 35-36.  He also told Totten that he was unable to enter a plea, and the hearing was adjourned.  **Id**. ¶ 37.  On June 4, Benitez entered a "not guilty" plea.  **Id**. ¶ 41-42.  On June 15, over Benitez's objections, Totten threatened to remove him from the hearing, and would not allow him to introduce certain evidence, or ask certain questions.  **Id**. ¶¶ 44-45.  On June 16, the hearing was extended to June 17.  **Id**. ¶ 46.  Totten affected the hearing by asking one of the witnesses leading questions.  **Id**. ¶ 48.  At the conclusion of the hearing, Benitez was found not guilty of solicitation, but guilty of threats, harassment, and lewd exposure, and sentenced to two years of "keep lock" confinement, loss of commissary, packages, and telephone privileges.  **Id**. ¶ 49.

On August 25, Benitez appealed the determination.  The charges of lewd exposure and harassment were affirmed while the charge of prohibited threats was dismissed, and his sentence was reduced by one year.  **Id**. ¶ 30-31.  Totten knew that Straley had filed these charges in retaliation for Benitez's complaint regarding her infringement on his privacy right.  **Id**. ¶ 51.

###  3.  June 9, 1998 Disciplinary Hearing re May 29, 1998 Misbehavior Report

On June 3, 1998, Benitez requested certain evidence from Tier III hearing assistant Dolan

---

[3]Benitez's belongings were later returned but he found the items smeared with green paint and his walkman broken.  Pl. Claim ¶¶ 38-39.  Benitez made a complaint to Artuz, Schneider, Gourd, and Bartlett, but no investigation took place.  **Id**. ¶ 40.

to prepare for the hearing conference, but no evidence was provided to him. **Id**. ¶¶ 52-53. Morton did not allow Benitez to introduce relevant evidence or to ask certain questions. **Id**. ¶ 55. Benitez was found guilty of all charges; he was given six months confinement in SHU, and loss of packages, commissary, and telephone privileges. **Id.** ¶ 57. Defendant Selsky later affirmed this determination despite Benitez's claims that the hearing was not fair and impartial. **Id**. ¶ 58.

### 4. July 18, 1998 Misbehavior Report and Subsequent Disciplinary Hearing

Benitez was forced to sleep in a cell in G-Block without a mattress or bed linens from May 29, 1998, to August 8, 1998, and defendants Schmitt, Artuz, Schneider, Goord, Bartlett, Totten, Miller, Tucker, and Keysler were aware of, and approved, this conduct. **Id**. ¶ 63. On July 18, defendant Tucker falsified a misbehavior report against Benitez in retaliation for Benitez's repeated requests for bed linens, a mattress, and hospital care. **Id**. ¶ 60. On July 24, defendant Williams disciplined Benitez at a Tier II hearing for not appearing even though Benitez was not given an opportunity to appear. **Id**

### 5. October 21, 1998 Incident

On October 21, 1998, defendant Stiles escorted Benitez out of his cell to attend a deposition. Defendant Straley whispered something to Stiles and then entered a room with defendant Maldonado. **Id**. ¶ 65. Benitez was told to move into a holding cell, or "bull pen." **Id**. ¶ 66. Benitez asked why he had to enter the cell, and Maldonado, Straley, and Stiles struck him in the face with handcuffs, cutting his lip, and pushed him into the cell, where he cut his head. **Id**. ¶ 67. Benitez claims he was left in the holding cell for forty-five minutes without medical attention while defendants wrote up false misbehavior reports in retaliation for the misbehavior reports Benitez had filed against defendant Straley. **Id**. ¶ 67. When he was released from the

holding cell, Benitez was given a wet towel by Schneider to hide the severity of his injuries. **Id**. ¶ 70. Straley fabricated a misbehavior report charging Benitez with harassment, threats, and refusing an order. **Id**. ¶ 70. Defendant Maldonado also filed a misbehavior report containing various charges. **Id**. ¶ 72. On October 22, Benitez was transferred to the Attica Correctional facility. **Id**. ¶ 73. Benitez claims he was transferred in retaliation for his numerous complaints. **Id**.

### 6.     Claims Arising During Plaintiff's Attica Incarceration

On October 29, 1998, defendant Schoellkopf commenced a Tier III hearing against Benitez based on the October 21 charges. **Id**. ¶ 75. Schoellkopf denied Benitez the opportunity to present relevant witnesses and evidence. **Id**. ¶¶ 73-82. Benitez was found guilty of all charges, and sentenced to four months of SHU confinement. **Id**. ¶ 83.

On February 12, 1999, Benitez complained that prison guard defendants Kelly, Berbary, and Corcoran were serving cold meals, turning off his cell light, and denying him his daily hour of exercise. **Id**. ¶ 86. No action was taken to investigate this complaint.[3] **Id**. On February 22, defendant Rademacker refused to give Benitez breakfast. When Benitez asked him what his name was, Rademacker stated that Benitez would not be around long enough to find out. **Id**. ¶ 88. Five minutes later, defendant Acquard threw a bucket of water at Benitez and stated "that was [his] ticket out of here." **Id**. ¶ 89. Defendants Corcoran and Sassy escorted Benitez out of his cell, where there was a guard holding a video recorder. **Id**. at 90. Sassy removed Benitez's prescribed glasses, and Corcoran told Benitez to be quiet when he kept asking for his glasses. **Id**. ¶ 91. Then, Corcoran and Sassy forced Benitez wrists inward against the edges of his handcuffs,

---

[3]The complaint is unclear whether it was only Benitez who received a cold meal, or whether meals were being served, and he was denied his provision.

causing a severe cut on both wrists, and falsified reports claiming that Benitez's wrist injuries were not serious. **Id**. ¶¶ 92-94. On February 22, Benitez complained about his lost glasses and the unlawful treatment, but no action was taken.

On the same date, defendant Rademacker entered Benitez's cell and destroyed his typewriter, legal documents, law books, tapes, army jacket, and other personal items. **Id**. ¶ 98. Defendant Acquard also filed a complaint against Benitez alleging assault on staff, unhygienic acts, and refusing orders. **Id**. ¶ 99. Acquard claims in the misbehavior report Benitez threw a bucket of an unknown substance on him. **Id**.

On February 23, defendant Sinicki served Benitez with a copy of Acquard's misbehavior report and refused to read it to Benitez who could not read it without his glasses. **Id**. ¶ 100. During the February 24 hearing, Benitez could not read the complaint, and could not prepare an adequate defense. **Id**. ¶ 101. On March 4, Benitez was found guilty of the assault alleged in Acquard's report, and sentenced to five years SHU confinement without commissary, packages, and telephone privileges. **Id**. ¶ 108.

**B.    Procedural Background**

On August 14, 2001, defendants filed a motion to dismiss pursuant to 42 U.S.C. §1997(e) of the Prison Litigation Reform Act ("PLRA"), claiming that Benitez had failed to exhaust all of his administrative remedies prior to seeking relief in federal court. District Judge Richard C. Casey referred this matter to the undersigned. This Court recommended that the motion to dismiss be granted in favor of defendants pursuant to FRCP 12(b)(6). **Benitez v. Straley**, 2002 WL 485692 (S.D.N.Y. Mar 27, 2002). Judge Casey adopted the Report and Recommendation with modifications, holding that the dismissal was proper not under FRCP 12(b)(6), but under

FRCP 12(b)(1), for failing to exhaust administrative remedies.  **Benitez v. Straley**, 2002 WL 31093608 (S.D.N.Y. Sept. 18, 2002).

Benitez filed an appeal claiming that exhaustion under the PLRA was not jurisdictional. *See* **Richardson v. Goord**, 347 F.3d 431, 433 (2d Cir. 2003) (A prisoner's failure to exhaust grievances internally does not leave federal court without subject matter jurisdiction).  The Second Circuit remanded for further consideration.  **Benitez v. Straley**, 94 Fed. Appx. 854 (2d Cir. 2004).  Defendants have reinstated their motion to dismiss, and  have requested a change of venue from the Southern District of New York to the Western District of New York.

### III. DISCUSSION

A.      **Standard of Review for Motion to Dismiss**

When ruling on a 12(b)(6) motion, the Court confines its evaluation to the facts stated in the complaint.  The Court "may dismiss the complaint only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." **Sykes v. James**, 13 F.3d 515, 519 (2d Cir. 1993) (internal quotations and citations omitted). Furthermore, a *pro se* plaintiff's pleading must be construed liberally in a light most favorable to him "to raise the strongest argument that they suggest."  **Graham v. Henderson**, 89 F.3d 75, 79 (2d Cir. 1996) (*quoting* **Burgos v. Hopkins**, 14 F.3d 787, 790 (2d Cir. 1994)).   The Court will grant a motion to dismiss pursuant to 12(b)(6) if, taking the plaintiff's allegations as true, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  **Conley v. Gibson**, 355 U.S. 41, 45-46 (1957); *see also* **Henderson v. Doe**, 1999 WL 378333, at *1 (S.D.N.Y. June 10, 1999).

**B.     Exhaustion**

Defendants allege that Benitez's claim must be dismissed because he failed to exhaust his administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a).  The PLRA applies to civil rights claims and requires a prisoner to exhaust all administrative channels "as are available" before bringing a claim to federal court.  "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'"  ***See* Abney v. McGinnis**, 380 F.3d 663, 667 (2d Cir. 2004) (***quoting* Booth v. Churner**, 532 U.S. 731, 738 (2001)).  Further, a prisoner is not required to file numerous grievances after the promised relief is not provided.  **Id**. at 668-69.

The PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether involv[ing] general circumstances or particular episodes, and whether alleg[ing] excessive force or some other wrong."  **Porter v. Nussle**, 534 U.S. 516, 532 (2002).  Although the exhaustion requirement is not jurisdictional, **Richardson**, 347 F. 3d at 433-34, a defendant may raise exhaustion as an affirmative defense.  ***See* Johnson v. Testman**, 380 F.3d 691, 696 (2d. Cir. 2004) (finding that exhaustion is an affirmative defense that must be asserted in order not to be waived).  As such, the burden is on the defendant to prove that the plaintiff failed to exhaust.  ***See* McCoy v. Goord**, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003).  Prison officials are in a better position to produce documents that set forth prison administrative procedures and demonstrate an inmate's non-exhaustion.  **Id**

Defendants have proffered an affidavit from Karen Bellamy, Assistant Director of Inmate Grievance Program at New York State Department of Correctional Services and a declaration from Benjamin Lee, Assistant Attorney General.  ***See*** Karen Bellamy Affidavit in Support,

August 14, 2001 ("Bellamy Aff."); Lee Declaration in Support of Motion to Dismiss, March 28, 2005 ("Lee Decl."). Bellamy states that the claims Benitez is alleging in this suit may be grieved through the Inmate Grievance Program, but she has no records from Benitez to the Central Office Review Committee of any appeals made while he was at the Green Haven facility except for an incident where he was denied envelopes. Bellamy Aff. ¶ 5. Lee attaches a number of grievances Benitez made at Attica which include many of the same facts alleged in Benitez's complaint, including an incident in which an officer took Benitez's glasses and threw them on the floor and another in which his property was confiscated. Lee Decl., Exh. A.

When a prisoner challenges a defendant's contention that he failed to exhaust, a three-part inquiry is appropriate: (1) Were administrative remedies "available" to the prisoner? (2) Did the defendant forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it, or did the defendant's actions inhibit the inmate such that the defendant should be estopped from raising the plaintiff's failure to exhaust as a defense? (3) Are there "special circumstances" to justify the prisoner's failure to exhaust? **Hemphill v. New York**, 380 F.3d 680, 686 (2d Cir. 2004). Upon a finding that administrative remedies were unavailable or that a defendant's actions inhibited an inmate from exhausting those remedies, the analysis of special circumstances is unnecessary. *See* **id**.

1.    **Availability of Administrative Remedies**

Benitez asserted that he filed six grievances with the Inmate Grievance program in order to exhaust his administrative remedies and comply with the PLRA. *See* Benitez Affidavit in Opposition to Defendant's Motion for Relief ("Benitez Aff.") ¶¶ 5-13. His explanation for his failure to further exhaust is that his grievances were resolved informally, that he was satisfied

10

with the resolution, and subsequently, he signed the informal resolution letters.  **Id**. ¶¶ 5-10.

| Filed Complaint with Grievance Program | Resolved Informally |
|---|---|
| May 28, 1998- 1st Grievance | June 5, 1998 |
| May 29, 1998- 2nd Grievance | June 8, 1998 |
| June 3, 1998- 3rd Grievance | June 11, 1998 |
| July 18, 1998- 4th Grievance | July 27, 1998 |
| October 21, 1998- 5th Grievance | October 22, 1998 |
| February 22, 1999- 6th Grievance | February 26, 1999 |

Benitez claims that these informal resolutions were not implemented and later denied, but he was notified after the deadline for timely filing of an appeal had expired.  **Id**. ¶ 11.  He also notes that he cannot provide copies of the letters as they were confiscated by defendants.  **Id**. at 6.

This Court's first Report and Recommendation did not consider this argument because it appeared to contradict statements in Benitez's complaint to the effect that his appeals had been "denied."  **Benitez**, 2002 WL 485692, at *3.  As Judge Casey stated in his opinion and order adopting and modifying that Report and Recommendation, Benitez then submitted objections to that Report and Recommendation explaining that he did not mean his pleadings to imply that he had filed appeals which were denied, but that he had filed grievances, which were closed by signing the informal resolution letters, that those resolutions were not implemented, and that no provisions allowed for further review.  *See* **Benitez**, 2002 WL 31093608, at *2.  The Court finds this explanation sufficient, especially given the detail Benitez has provided.  The fact that defendants bear the burden of proof here alleviates some of the pleading particularity requirements.  **McCoy**, 255 F. Supp. 2d at 248.

Defendants have not responded to Benitez's claim that no provisions allowed for further exhaustion of some of his claims. Rather than point to specific provisions to refute his statement, defendants simply note that the record does not establish that Benitez appealed the grievances for which they have provided documentation. Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Complaint and Motion for Change of Venue ("Def. Reply") at 6. However, one attachment they have submitted states that the glasses-related grievance could not be appealed, that the grievance is closed, and "satisfied the necessity of 'Exhaustion of Remedies.'" **Id**. (pages unmarked). Furthermore, while an attachment pertaining to one of Benitez's property-related grievances states that Benitez needed to file a claim with the Business Office for the loss of his property, the form also indicates that Benitez notified defendants that he needed to know the name of the officer in order to take further action. **Id**. Rather than meet the defendant's burden to establish that Benitez has not exhausted administrative remedies, this submission supports Benitez's claim that further remedies were unavailable either because there was no route of further exhaustion, or defendants took actions which kept Benitez from pursuing additional remedies.

Where a favorable informal ruling is never implemented, or informal resolutions were obtained, exhaustion may not be required. **Abney**, 380 F.3d at 668-69; **Marvin v. Goord**, 255 F.3d 40, 43 n.3 (2d Cir. 2001). *See* **Thomas v. Cassleberry**, 315 F. Supp. 2d 301, 304 (W.D.N.Y. 2004) (granting summary judgment on exhaustion issue because there was no evidence that informal complaints had resolved matters in the plaintiff's favor); **Muhammad v. Pico**, 2003 WL 21792158, *8 n.23 (S.D.N.Y. Aug. 5, 2003) (same). Accepting Benitez's statements, it appears his grievances were resolved informally, there was no implementation of

the resolution, and either he was not given notice of any grievance denials in a timely fashion or there were no provisions providing for further review, making further administrative remedies unavailable.

### 2. Estoppel

Benitez alleges that prison officials prevented him from exhausting his administrative remedies by subjecting him to false disciplinary charges. Pl. Claim ¶¶ 11-12, 23, 60, 71-73. His personal property and legal documents were destroyed or confiscated. **Id**. ¶ 16. In retaliation for his complaints, defendants assaulted him on two occasions, and one of the beatings resulted in a six day hospital stay. **Id**. ¶¶ 19-20, 59, 67. Additionally, he contends that he was transferred to Attica in order to preclude him from pursuing his complaints. **Id**. ¶ 73.

Under these facts, defendants are estopped from asserting an exhaustion defense because their actions and the environment of retaliatory harassment attempted to inhibit Benitez from pursuing his claims. *See* **Ziemba v. Wezner**, 366 F. 3d 161, 162-64 (2d Cir. 2004) (vacating and remanding where the district court failed to consider claim that plaintiff was precluded from exhaustion of available remedies because prison officials beat him, threatened him, denied him grievance forms and writing implements, and transferred him to another correctional facility). *See also* **Rivera v. Pataki**, 2005 WL 407710, at *11 (S.D.N.Y. Feb. 7, 2005) (prison officials were estopped from raising failure to exhaust as an affirmative defense because they told the prisoner his grievances were untimely).

Given the finding that administrative remedies were unavailable to Benitez and that defendants are estopped from raising exhaustion because their actions inhibited Benitez from pursuing his claims, an assessment of whether special circumstances existed is unnecessary.

Benitez exhausted all possible administrative options available to him.  Defendant's motion to dismiss pursuant to PLRA, 42 U.S.C. § 1997e(a) should be **DENIED**.

**C.     Conspiracy Claim**

Benitez claims that several of the guards from the Green Haven facility conspired to violate his civil rights by covering up unlawful behavior and falsifying misbehavior reports.  *See* Pl. Claim ¶¶ 65-70 (alleging conspiracy to physically abuse Benitez in retaliation for a report made against a guard).  Defendants contend that Benitez's conspiracy allegations are only conclusory and non-specific allegations, and should be dismissed.[4]

In order to allege conspiracy under § 1983, Benitez must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  **Pangburn v. Culbertson**, 200 F. 3d 65, 72 (2d Cir. 1999).  In order to survive a motion to dismiss, Benitez must provide specific instances of misconduct and details such as time and place since mere "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are insufficient to state a claim."  **Crespo v. New York City Police Comm'r**, 930 F. Supp. 109, 118 (S.D.N.Y. 1996); *see also* **Dwares v. City of New York**,  985 F. 2d 94, 100 (2d Cir. 1993) (finding the elements of a conspiracy to assault "skinheads" by the police were sufficiently pled to defeat a motion to dismiss).  However, the Second Circuit has "recognized that such 'conspiracies are by

[4]Defendants argue that plaintiff has not adequately stated a conspiracy claim under 42 U.S.C. § 1985(3), which prohibits conspiracies undertaken for the purpose of depriving a person or class of equal protection or privileges under the law.  Defendant's Memorandum of Law in Support of their Motion to Dismiss the Complaint and Motion for Change of Venue ("Def. Mem.") at 15-17; *see* **Jews for Jesus, Inc. v. Jewish Community Relations Council of New York**, 968 F.2d 286, 290-91 (2d Cir. 1992).  However, Benitez has claimed conspiracy under 42 U.S.C. § 1983.  Pl. Claim ¶¶ 65-70; Plaintiff's Affidavit and Memorandum of Law In Opposition to Defendants' Motion For Relief ("Pl. Aff. and Mem.") ¶ 2.

their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." **Pangburn**, 200 F.3d at 72 (*quoting* **Rounseville v. Zahl**, 13 F.3d 625, 632 (2d Cir.1994)).

Benitez asserts that Straley, Stiles, and Maldonado conspired to impose an unconstitutional injury on his person for the numerous official misconduct complaints that he had filed against Straley and Fitzpatrick. Pl. Claim ¶¶ 64-70. His primary evidence of conspiracy is his allegation that on October 21, 1998, he witnessed a conversation between defendants Straley, Stiles, and Maldonado, and thereafter experienced an assault by those defendants. **Id.** ¶ 64-68. Benitez has provided definite allegations of facts from which a conspiracy between Straley, Stiles, and Maldonado could be inferred. He has provided detailed incidents of misconduct and provided specifics as to time and place. Although he could not hear the defendants' conversation on October 21, concerted action immediately following that conversation connects the conversation to the action. The fact that Benitez's allegations are supported by circumstantial evidence, rather than direct evidence, does not diminish his claim. "[A] plaintiff usually does not have access to the facts surrounding a conspiracy claim and the conspiracies are seldom proven with direct evidence . . ." **Crespo**, 930 F. Supp. at 118. The evidence proffered by Benitez sufficiently withstands a 12(b)(6) motion; therefore, defendants' motion to dismiss should be **DENIED**.

**D.     Retaliation**

To set forth a claim of retaliation, Benitez must demonstrate that the "(1) speech at issue was protected; (2) defendants took adverse action against [him]; and (3) that there was a causal connection between the protected speech and the adverse action." **Davis v. Goord**, 320 F.3d 346,

352 (2d Cir. 2003) (citations omitted).  Benitez must show a high level of factual detail that the retaliatory action would not have been taken "but for" the exercise of his legal rights.  **Baker v. Zlochowon**, 741 F. Supp. 436, 439 (S.D.N.Y. 1990).  Moreover, retaliation claims from prisoners need to be reviewed with "caution" because "virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act."  **Davis**, 320 F.3d at 352 (citations omitted).

Benitez alleges that he reported wrongdoings by prison officials.  This qualifies as protected speech and satisfies the first element.  **Id**. at 352-53.  After making these reports, Benitez suffered numerous retaliatory actions by prison officials, including falsified reports, SHU confinement, and transfer.  Pl. Claim ¶¶ 60 (false misbehavior reports filed in retaliation for repeated request for bed linens and a mattress), 71 (false misbehavior reports filed in retaliation for making a complaint against Straley regarding her privacy infringements), 73 (retaliatory transfer based on various complaints), 88 (complaining of cold breakfasts led to a retaliatory transfer), 99 (false misbehavior reports in retaliation for a complaint).  "Retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  **Davis**, 320 F.3d at 353 (citations omitted).  Courts have found actions similar to those alleged by Benitez sufficient to constitute an adverse action and survive a motion to dismiss.  ***See, e.g.,*** **Hernandez v. Goord**, 312. F. Supp. 2d 537, 544-45 (S.D.N.Y. 2004) (physical attacks and threats on plaintiff's life); **Davis**, 320 F.3d at 353. ("burying" grievances, discussing grievances with another prison official, ordering a "retaliatory cell search"); **Morales v. Mackalm**, 278 F.3d 126, 132 (2d Cir. 2002)

(transfer to psychiatric facility), ***abrogated on other grounds by* Porter v. Nussle**, 534 U.S. 516 (2002).

The third element in a retaliation claim presents unique problems in a prison context, where an alleged retaliatory action, such as a prison transfer, could also be taken for proper motives. In **Lowrance v. Achtyl**, 20 F.3d 529, 535 (2d Cir. 1994), the Court assumed *arguendo* that the plaintiff had established that the officials had a retaliatory motive in bringing charges, but then affirmed the dismissal of his complaint, concluding that his admission of the misbehavior described in the charge allowed the inference that the disciplinary charges would have been brought even in the absence of improper motives. **Id**. The inmate thus has an additional burden. His "claims must *render it unlikely* that the prison official would have performed the act absent a retaliatory purpose." **Rivera v. Senkowski**, 62 F.3d 80, 86 (2d Cir.1995) (emphasis added). ***See* Nicholas v. Tucker**, 89 F. Supp. 2d 475, 479-81 (S.D.N.Y. 2000). Benitez's allegations meet the standard as articulated in these cases. Many of his allegations describe incidents that could not have any proper motive. Those allegations which involve the filing of misbehavior reports sufficiently include evidence showing a retaliatory animus to survive a motion to dismiss.

Furthermore, a closeness in timing between an official's actions and a plaintiff's protected conduct can support an inference that there is a connection between the incidents. **Baker**, 741 F. Supp. at 440. While the timing is not clear with respect to every allegation, for some incidents Benitez has indicated that the conduct and retaliation occurred on the same day or within a number of days. Pl. Claim ¶ 86-93, 96-99. These allegations link his protected activity with the adverse actions. Therefore, Benitez has sufficiently proffered facts which link his protected activity with the adverse actions he suffered, satisfying the third element in **Davis**.

Taking into account Benitez's *pro se* status, the Court finds that he has adequately set forth a claim of retaliation and has met FRCP 8(a)'s requirement of a "short and plain" statement of his claim. *See* **Hernandez**, 312 F. Supp. 2d at 544-45; **Davis**, 320 F.3d at 352-53. He should be given an opportunity to present more facts in order to support his claim. *See* **Morales**, 278 F.3d at 131. Defendants' motion to dismiss the retaliation claims should be **DENIED**.

**E.      Deprivation of Property Without Due Process**

Benitez alleges that on May 28, 1998, Straley confiscated documents and a mirror from his cell. Pl. Claim ¶ 9. Benitez claims that on May 29, Surber broke his walkman and his typewriter. **Id**. at 16. Benitez also alleges that Ward, Surber, and Gunderman confiscated all of his personal state-issued property and returned the property on June 2, smeared with green oil paint. In addition, Benitez claims that his walkman was smashed, and his beard trimmer, personal photographs, and legal documents were missing. **Id**. ¶¶ 38-39.

Defendants assert that Benitez has failed to state a claim of a due process property deprivation in violation of the Fifth Amendment, because "there is no constitutional right prohibiting prison officials from confiscating a prisoner's personal property. The constitutional violation arises only if they confiscate that property without due process of law." *See* **Jackson v. Fed. Bureau of Prisons**, 1994 WL 282086, at *2 (S.D.N.Y. June 22, 1994). Defendants also assert that mere allegations of property deprivation do not by themselves state a constitutional claim under the Due Process Clause. **Id**. When a deprivation is "random and unauthorized," and thus renders a pre-deprivation hearing impossible, due process requires a post-deprivation hearing. *See* **DiBlaso v. Novello**, 344 F.3d 292, 302 (2d Cir. 2003), *cert denied*, 541 U.S. 988 (2004).

While defendants acted under color of law in the deprivation of Benitez's property,

18

Benitez has been afforded and has availed himself of due process. After the confiscation of his property, Benitez filed numerous inmate grievance complaints which were resolved when the Inmate Grievance Program (IGP) provided Benitez with Informal Grievance Recommendation Letters (IGRL's), which contained recommendations of relief. Benitez was satisfied with the recommended relief and informally resolved the grievances. Pl. Aff. and Mem. ¶¶ 5-15. Therefore, assuming that Benitez's property was taken by defendants, Benitez was afforded an adequate post-deprivation remedy under state law to redress his loss. ***See*** **Gill v. Stella**, 845 F. Supp. 94, 101 (E.D.N.Y. 1994). Since there is no due process violation when a post-deprivation remedy is available, defendants' motion to dismiss Benitez's due process claim should be **GRANTED**.

## F.    Medical Indifference

Punishments which are incompatible with "the evolving standards of decency . . . or involve the unnecessary and wanton infliction of pain" are repugnant to the standards established by the Eighth Amendment, which prohibits cruel and unusual punishment. **Estelle v. Gamble**, 429 U.S. 97, 102-03 (1976). Denial of medical care may result in pain and suffering which does not serve any penological purpose. **Gregg v. Georgia**, 428 U.S. 153, 173 (1976). To establish a claim, a prisoner must show "deliberate indifference to serious medical needs. The indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care." **Estelle**, 429 U.S. at 104-05. Medical indifference has both an objective and a subjective element. **Id**. Benitez must show that: (1) the alleged deprivation of care objectively was "sufficiently serious;" and (2) the defendants acted with a "sufficiently culpable state of mind." **Hathaway v. Coughlin**, 37 F.3d 63, 66 (2d Cir. 1994). Thus, the injury in question must reach a certain

19

threshold of seriousness before triggering a constitutional right to treatment.  **Chance v. Armstrong**, 143 F.3d 698, 702 (2d Cir. 1998).  To survive a motion to dismiss on a medical indifference claim, a plaintiff must set forth allegations of chronic pain or an injury that imposes a significant strain on daily activities.  **Id**.

Benitez claims Healy, Maldonado, and Stiles were indifferent to his medical needs by refusing to render aid to a cut on his head.  Pl. Claim ¶¶ 68-70.  Benitez also claims Higley, Corcoran, and Sassy were indifferent toward his wrist injuries.  **Id**. ¶¶ 93-94.  Benitez has failed to demonstrate that these injuries were sufficiently serious.  They are not permanent and there is no claim that they affect his daily activities.  There is no indication that the alleged injuries required stitches or wrist braces.  Since Benitez has failed to meet the objective standard for an Eighth Amendment claim, the defendants' motion to dismiss the claim should be **GRANTED.**

## G.    Personal Involvement

Defendants assert that Benitez failed to assert personal involvement of Schneider, Goord, Artuz, Bartlett, Schmitt, and Keyser in any of the challenged actions.  Personal involvement cannot be established through *respondeat superior*.  *See* **Walker v. Pataro**, 2002 WL 664040, at *10 (S.D.N.Y. Apr. 23, 2002).  In the absence of personal involvement, Benitez may also hold a supervisory official responsible through evidence that  "(1) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (2) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a custom or policy; (3) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (4) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."

**Colon v. Coughlin**, 58 F.3d 865, 873 (2d Cir. 1995).

1.      **Defendants Schneider, Goord, Artuz, and Bartlett**

Benitez mailed complaints to Schneider, Goord, Artuz, and Bartlett alerting them to wrongdoing by prison officials.  Pl. Claim ¶¶ 14, 33, 40.  He argues that these defendants were therefore aware of wrongdoing and failed to investigate the incidents.  **Id**.  He alleges that they either exhibited deliberate indifference to the rights of inmates by failing to act on information, or did nothing to remedy the wrong, when they had knowledge of an unconstitutional practice.  Therefore, Benitez asserts that receipt of his letter and the defendants' inaction imposes liability.

The mere assertion that supervisory officials ignored an inmate's letter, however, does not make such officials culpable.  **Walker**, 2002 WL 664040, at *11-13; **Bolanos v. Coughlin**, 1993 WL 762112, at *24-25 (S.D.N.Y. Oct. 15, 1993); **Candelaria v. Coughlin**, 787 F. Supp. 368, 373 (S.D.N.Y.), *aff'd*, 979 F.2d 845 (2d Cir. 1992).  Except for any general knowledge based on Benitez's alleged letter, the facts alleged do not meet the criteria in **Colon**.  58 F. 3d at 873.  Benitez fails to state a claim, and defendants' motion to dismiss Benitez's personal involvement claims with respect to these supervisory defendants should be **GRANTED.**

2.      **Defendants Schmitt and Keyser**

Benitez alleges that Schmitt and Keyser willfully ignored his request for a mattress and linens for his cell in G-Block, and that he slept on the floor of his cell from May 29, 1998, to August 8, 1998.  Pl. Claim ¶¶ 62-63.  Benitez claims that these conditions exacerbated existing medical problems such as  "asma-bronchitis, and ongoing extreme pain in his back, head, neck, rib cage area, arms, and legs," **id**. ¶ 63, and constitute an Eighth Amendment violation of cruel and unusual punishment.  Schmitt is alleged to have been involved in creating these conditions.

**Id**. ¶ 22.  Benitez claims he notified Keyser of the conditions, requested a mattress and linens, and Keyser declined to assist.  **Id**. ¶ 62.

As the Supreme Court has explained, "The Constitution . . . does not mandate comfortable prisons . . . and only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation."  **Wilson v. Seiter**, 501 U.S. 294, 298 (1991) (citations and internal quotations omitted).  "[A]n inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety."  **Moore v. Gardner**, 199 F. Supp. 2d 17, 36-37 (W.D.N.Y. 2002).

The Second Circuit has found that prisoners claiming detention under very cold temperatures and without bedding can make out an Eighth Amendment claim of cruel and unusual punishment.  *See, e.g.,* **Gaston v. Coughlin**, 249 F.3d 156, 166 (2d Cir. 2001) (reinstating Eighth Amendment claims of frigid temperatures dismissed by district court); **Channer v. Mitchell**, 43 F.3d 786, 788 (2d Cir. 1994) (denying motion to dismiss where prisoner alleged that officer had required him to spend two nights in a holding cell without bedding).  Accordingly, where prisoners have made allegations that could rise to such unconstitutional conditions, but where some facts remain unclear, courts in this Circuit have allowed their claims to continue.  *See, e.g,* **Moore**, 199 F. Supp. at 37-38 (denying summary judgment where plaintiff alleged he was kept in a cold, drafty cell for three weeks without sheets and with only one blanket); **Beckford v. Portuondo**, 151 F. Supp. 2d 204, 212-13 (N.D.N.Y. 2001) (denying motion for summary judgment where plaintiff alleged he was forced to sleep on cold steel without bedding because he

refused to cut a fingernail); **Maguire v. Coughlin**. 901 F. Supp. 101, 104-05 (N.D.N.Y. 1995) (denying summary judgment where plaintiff alleged he was confined in a cold cell without bed linens). *Compare with* **Brown v. McElroy**, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (dismissing claim of unconstitutional conditions where plaintiff alleged he was kept in an extremely cold cell without clean linens, toiletries, or clean clothing, but admitted he was able to get warm with some blankets).

Here, Benitez alleges he had no mattress or linens at all. He also alleges that he was denied other protective clothing. Pl. Claim ¶ 22 (stating he was confined without a mattress, bed linen, or any item other than the t-shirt, jogging shirts, and shower sandals [he] was wearing). While not explicitly stating that this exposed him to cold temperatures, Benitez clearly implies that this is the case. He mentions his skimpy clothing, and asserts that the conditions aggravated his asthma-bronchitis. **Id**. ¶ 22, 63. Under these facts, Benitez has articulated an Eighth Amendment claim. At the same time, he has adequately alleged that Schmitt and Keyser were directly and personally involved in creating or maintaining the conditions at issue. Defendants' motion to dismiss the claims against Schmitt and Keyser should be **DENIED**.

Similarly, Schmitt and Keyser are not entitled to qualified immunity. Qualified immunity is established when:

> "either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) "a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.

**Anderson v. Record**, 317 F.3d 194, 197 (2d Cir. 2003) (*quoting* **Young v. County of Fulton**,

160 F.3d 899, 903 (2d Cir. 1998)).  The threshold question in establishing qualified immunity is assessing whether there has been a constitutional violation of plaintiff's rights.  ***See* Saucier v. Katz**, 533 U.S. 194, 201 (2001).  Thereafter, it is necessary to look at each defendant's acts to evaluate whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted; if so, then qualified immunity does not apply.  **Hope v. Pelzer**, 536 U.S. 730, 752 (2002).  Here, Benitez has articulated a claim of a violation of the Eighth Amendment's prohibition of cruel and unusual punishment and established the personal involvement of Schmitt and Keyser.  The Second Circuit had established that this prohibition covers prison conditions such as cold temperatures and lack of a mattress four years before the facts leading to Benitez's case occurred.  **Channer**, 43 F.3d at 788.  A reasonable officer should have known that to deprive an inmate of a mattress and bed linens for almost three months could violate his constitutional rights.

**H.      Due Process**

Benitez claims various violations of his due process rights stemming from disciplinary hearings in June, July, and October of 1998, and February of 1999.  The following defendants were directly involved in the hearings: Totten, Decicco, Dolan, Morton, Williams, Schoellkopf, and Sinicki; and Selsky affirmed the decisions of the hearings when Benitez appealed.

An inmate does not have to be afforded the same procedural safeguards as in a criminal prosecution, but he must be afforded certain minimum rights to meet the due process requirement of the Fourteenth Amendment.  ***See* Espinal v. Goord,** 180 F. Supp. 2d 532, 537 (S.D.N.Y. 2002) (*citing* **Edwards v. Balisok**, 520 U.S. 641, 647 (1997)).  These rights include: (1) at least twenty-four hours written notice of the disciplinary charges; (2) the permission to call witnesses and

present evidence if doing so "would not be unduly hazardous to institutional safety or correctional goals"; (3) a fair and impartial hearing officer; (4) a disciplinary conviction supported by evidence; (5) "a written statement of fact finding that support the disposition as well as the reasons for the disciplinary action taken." **Id**. at 538 (*citing* **Wolff v. McDonell**, 418 U.S. 539, 566 (1974)).

Benitez alleges the following due process violations: 1) lack of notice of disciplinary charge; 2) refusal to allow witnesses and evidence at hearings; 3) lack of assistance at one hearing; 4) refusal to allow Benitez to attend one of the hearings; 5) undue delay; and 6) biased hearing officer.[2] Though many of the facts remain unclear, at this stage, Benitez's allegations are sufficient to state a claim in the first three areas. The rights implicated by those allegations have also been clearly established, and the defendants involved are not entitled to qualified immunity. The latter three allegations either fail to state a claim for violation of due process or remain unclear in the law, thus entitling defendants to qualified immunity as to those claims.

### 1. Lack of Notice

A prisoner must have twenty-four hours written notice of charges. **Wolff**, 418 U.S. at 566. If a prisoner is not afforded sufficient time to prepare for a hearing, his constitutional rights may be violated. **Alvarez v. Coughlin**, 2001 WL 118598, at *7 (N.D.N.Y. Feb. 6, 2001) (denying

---

[2] Benitez also alleges that there was insufficient evidence to support the decisions of the hearings. In a footnote, defendants argue that this claim fails as to the February 24, 1999 hearing. Def. Mem. at 27, n.12. The standard for reviewing the sufficiency of evidence in prison disciplinary hearings is "extremely tolerant" and satisfied by "some evidence"; however, the evidence must be "reliable evidence." **Sira v. Morton**, 380 F.3d 57, 69 (2d Cir. 2004) (*citing* **Luna v. Pico**, 356 F.3d 481, 488 (2d Cir. 2004), and **Taylor v. Rodriguez**, 238 F.3d 188, 194 (2d Cir. 2001)). Despite this standard, Benitez's allegations are sufficient to make out a claim at this stage. The defendants have not challenged his claim as to the earlier hearings. It does appear the decision resulting from the February 1999 hearing was supported by "some evidence," but it is difficult to evaluate whether this evidence is reliable because Benitez's assessment of the hearing was thwarted by both a lack of assistance and an inability to see the videotape shown by the prison officials. Pl. Claim ¶ 106.

summary judgment on issue of whether plaintiff's trial materials were confiscated which kept him from preparing adequate defense).  Furthermore, the notice of charges against him must contain "sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense."  **Sira v. Morton**, 380 F.3d 57, 70-72 (2d Cir. 2004) (notice found inadequate).  At his June 1998 hearing, Benitez claims that although he was served with the misbehavior report, it was then confiscated and he did not have sufficient time to prepare for the hearing.  Pl. Claim. ¶¶ 35, 37, 41-51.  The hearing was adjourned to allow Benitez's property to be returned to him, property which apparently included the misbehavior report which had been confiscated.  **Id**. ¶ 37.  Benitez then alleged that the report lacked sufficient information for him to be clear on the charges.  **Id**. ¶ 42.

Defendants argue that because the hearing was adjourned and the misbehavior report returned to allow Benitez time to prepare, there is no violation.  Def. Mem. at 23.  Defendants do not directly address the issue of whether the report was sufficiently specific but cite a case in which an inmate misbehavior report was considered adequate notice.  ***See* Kingwood v. Coombe**, 1997 WL 323913, at *5 (S.D.N.Y. June 13, 1997).  The misbehavior report in that case, however, specified the conduct the inmate had engaged in which constituted a violation.  **Id**. at *1.  Here, Benitez alleges the particular acts were not described.  Pl. Claim ¶ 42.  As it appears Benitez either did not have timely notice, and/or the notice was insufficiently detailed, he has adequately claimed a violation of due process.  At the same time, the defendants involved in these allegations are not entitled to qualified immunity because an inmate's right to adequate notice of his disciplinary charges has been clearly established since 1974.  ***See* Wolff**, 418 U.S. at 566.

## 2. Refusal to Call Witnesses and Present Evidence

A hearing officer may rightfully refuse to call a witness if the refusal is justified, *see* **Scott v. Kelly,** 962 F.2d 145, 146-47 (2d Cir. 1992), but the burden is on the prison officials to "prove the rationality of the decision to exclude witnesses." **Moye v. Selsky**, 826 F. Supp. 712, 717 (S.D.N.Y. 1993). *See* **Fox v. Coughlin**, 893 F.2d 475, 479 (2d Cir. 1990); **Bass v. Grottoli**, 1995 WL 565979, at *5 (S.D.N.Y. Sept. 25, 1995) ("Prison officials must provide an explanation of their decision not to permit a prisoner to call a witness or present evidence–either on the record of the hearing or in a later proceeding–and such an explanation will satisfy the due process clause if it is 'logically related to preventing undue hazards to institutional safety or correctional goals.'") (*quoting* **Ponte v. Real**, 471 U.S. 491, 497 (1985)). "A hearing officer may also refuse to call a witness 'on the basis of irrelevance or lack of necessity.'" **Campo v. Keane**, 913 F. Supp. 814 (1996), 821-22 (S.D.N.Y. 1996) (*citing* **Kingsley v. Bureau of Prisons**, 937 F.2d 26, 30 (2d Cir. 1991)). At hearings held in June and October of 1998, Benitez claims that he was not allowed to call certain witnesses, question them as he found relevant, or present pieces of evidence. Pl. Claim ¶¶ 46, 55-56, 78, 81-82. While defendants question the relevancy of some of the evidence that Benitez intended to use during the hearing, Def. Mem. at 25, a simple statement to this effect is insufficient to meet their burden. *See* **Scott v. Coughlin**, 78 F. Supp. 2d 299, 316 (S.D.N.Y. 2000) (finding that prison officials' unjustified refusal to call relevant witnesses constituted a violation of inmate's due process rights). Defendants have not presented any explanation for the exclusion of witnesses, certain lines of questioning, or pieces of evidence. Therefore, Benitez has adequately claimed a due process violation pertaining to his witnesses and evidence. At the same time, the cases establishing these rights clearly articulated the standards involved as early as 1990.

*See* **Fox v. Coughlin**, 893 F.2d. at 479.  Therefore, the defendants involved in these allegations are not entitled to qualified immunity.

**3.      Lack of Assistance**

An inmate has a constitutional right to assistance in establishing a defense and prison officials are obligated to provide such assistance when the inmate is faced with disciplinary charges.  *See* **Eng v. Coughlin**, 858 F.2d 889, 897 (2d Cir. 1988).  It is not necessary for inmate assistance to rise to a level of legal counsel or advocacy.  *See* **Silva v Caset,** 992 F.2d 20, 22 (2d Cir. 1993).  Benitez claims that because his glasses had been taken away he could not read the disciplinary charges at issue in his February 1999 hearing.  Pl. Claim ¶¶ 100-01.  Because he could not see, he also could not choose an assistant from the list and asked Sinicki to read him three names.  **Id**.  Instead, Sinicki apparently reported that Benitez had refused assistance.  **Id**. Benitez also alleges that he was unable to view the videotape evidence presented at trial because of his lost glasses.  **Id**. ¶ 106.  Benitez could not read the misbehavior report without his glasses and was denied assistance altogether.  Therefore, he was unable to "marshal evidence and prepare a defense."  **Eng,** 858 F.2d at 898.  *See* **Ayers v. Ryan**, 152 F.3d 77, 80-81 (2d Cir. 1998) (holding inmate's due process rights were violated where assistant failed to call witnesses the inmate requested).  Benitez has made out a claim for violation of his due process rights in relation to the lack of assistance at his February 1999 hearing.  At the same time, the cases establishing these rights clearly articulated the standards involved as early as 1988.  *See* **Eng,** 858 F.2d at 898. Therefore, the defendants involved in these allegations are not entitled to qualified immunity.

**4.      Refusal to Allow Benitez to Attend July 1998 Hearing**

Benitez alleges he was not given an opportunity to attend a Tier II disciplinary hearing on

July 24, 1998, through which he was punished for certain acts reported in misbehavior reports.  Pl.

Claim ¶¶ 60-61.  Benitez does not indicate what sanction he received.  Defendants report that

thirty days SHU confinement is the maximum penalty for a Tier II hearing, Def. Mem. at 25,

which does not rise to the level of a due process violation as explicitly determined by the Supreme

Court in **Sandin v. Conner**, 515 U.S. 472 (1995).  Here, Benitez has not claimed a deprivation

that rises to a level of a due process violation.

     **5.**       **Delay in Completion of Hearing**

New York State regulations governing inmates establish a liberty interest for

Constitutional purposes, and undue delay in providing a hearing will result in a violation.  ***See,***

***e.g.,* Soto v. Walker**, 44 F.3d 169, 172-73 (2d Cir. 1995) ("The failure to provide informal review

procedures within even as short a time as seven days in connection with a transfer into

administrative confinement states a due process claim.").  It is unclear, however, what period of

delay is prohibited.  ***See* Horne v. Coughlin**, 155 F.3d 26, 33 (2d Cir. 1998) (Cardamone, J.,

dissenting).

Benitez's June 1998 hearings lasted five days longer than allowed by New York State

regulations.  Def. Mem. at 24 (citing 7 New York Administrative Code § 251.5.1).  Defendants

argue this delay is *de minimis* and that Benitez is responsible for the delay because of his requests

for extensions.  **Id**.  Benitez claims he needed extensions because of defendants' failure to provide

him with a copy of his misbehavior report.  Pl. Claim. ¶¶ 35, 37, 41-51.

Most cases discussing the delay issue involve questions concerning the start of hearings.

***See, e.g.,* Jermosen v. Cahill**, 159 F.3d 1347 (2d Cir. 1998) (finding no due process violation

where length of confinement due to delay in initiating hearing was less than that considered in

**Sandin**); **Hynes v. Squillace**, 143 F.3d 653, 658-59 (2d Cir. 1998) (inmate presented no evidence twenty-one days of keeplock confinement was atypical or significant, thus failing to meet threshold of **Sandin**).

When courts have considered delays in the completion of hearings, they have found periods of one or two days *de minimis*. **Arosena v. Coughlin**, 1996 WL 607096, at *3 (W.D.N.Y. Oct. 2, 1996) (two-day delay); **Green v. Bauvi**, 46 F.3d 189, 195-96 (2d Cir. 1995) (one-day delay). It was not clear whether the five day delay alleged by Benitez violated his due process rights. The defendants involved are therefore entitled to qualified immunity.

**6.     Biased Hearing Officer**

"The degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." **Francis v. Coughlin**, 891 F.2d 43, 46 (2d Cir. 1989). "[D]ue process requires only that the hearing officer not be 'a hazard of arbitrary decisionmaking.'" **Espinal**, 180 F. Supp. 2d at 538-39 (quoting **Wolff**, 418 U.S. at 571). Benitez claims that Totten, who oversaw his June 1998 hearings, was biased and therefore he was deprived of an impartial hearing officer. *E.g.,* Pl. Claim ¶¶ 47-48. He alleges Totten's questioning of another officer, Gunther, was done in a way "to ensure that Gunthers not testify in favor of Benitez's defense theory." **Id**. ¶ 47. Benitez has included quotes intended to demonstrate Totten's intentions, Pl. Claim ¶¶ 47-48, but the bias and the claimed resulting effect on the witness are not evident. Other actions Totten took during the hearing implicate other violations of due process, for example, refusal to allow witnesses and evidence. However, he was not involved in the incidents leading to the misbehavior reports at issue in the disciplinary hearings. *See* **Powell v. Ward**, 542 F.2d 101, 102-03 (2d Cir. 1976) (prison official who directly participated in or witnessed acts complained of

30

may be insufficiently impartial).  Benitez has not provided enough facts to make a claim that Totten was so biased as to rise to the level of a due process violation.

**J.      Change of Venue**

Venue in a case involving a federal question is proper where the majority of the events occurred, and where the defendants can be found.  28 U.S.C. § 1391(b).  The majority of the events arising out of this suit took place in Green Haven.  Of the thirty-four defendants, the majority are at Green Haven.[3]  Green Haven is located in Dutchess County, within the Southern District of New York.  Defendants contend, however, that since eleven defendants and Benitez are in Attica, and the supervisory defendants are in Albany, both located in the Western District of New York, venue is also proper in Western District of New York.  Since venue is proper in either the Southern or Western District of New York, the case should be determined based on the "convenience of the transfer" and where it will best serve the "interest of justice."  **Orb Factory Ltd. v. Design Science Toys Ltd.**, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998).

The motion to transfer venue from one federal district court where venue is proper to another is governed by 28 U.S.C. § 1404(a).  The burden is on the moving party to demonstrate by a clear and convincing showing that transfer is proper and should be granted.  *See* **Morales v. Navieras de Puerto Rico,** 713 F. Supp. 711, 712 (S.D.N.Y. 1989).  However, a motion for transfer of venue lies within the "broad discretion of the court" considering the "notions of convenience and fairness" evaluated through the individual facts of the case.  **Cancel v. Mazzuca**,

---

[3] Green Haven defendants are: Straley, Sparhawk, Artuz, Schneider, Gunderman, Surber, Ward, Schmitt, Decicco, Totten, Miller, Dolan, Morton, Tucker, Williams, Keysler, Stiles, Maldonado, G. Schneider, and Healy.  Attica defendants are Schoellkopf, Conway, Kelly, Berbary, Corcoran, Rademacker, Acquard, Sassy, Higley, Bea, Sinicki.  Supervisory defendants Goord, Bartlett, and Selsky are based in Albany.

2002 WL 1891395, at *2 (S.D.N.Y. Aug. 15, 2002) (*citing* **In re the Cuyahoga v. Equip. Corp.**, 980 F.2d 110, 117 (2d Cir. 1992)).  In deciding a motion to dismiss for improper venue, the court balances several factors, the most crucial being the convenience of the witnesses and parties, trial efficacy, and the interests of justice.  *See* **Palace Exploration Co. v. Petroleum Dev.  Co.**, 41 F. Supp. 2d. 427, 437 (S.D.N.Y. 1998).

As the moving party, defendants "must specifically list the evidence and witnesses on which [they] intend to rely in the transferee district, along with the general statement of the topics of each witness' testimony."  *See* **Colour & Design v. U.S. Vinyl Mfg. Grp**, 2005 WL 1337864, at *4 (S.D.N.Y. June 3, 2005) (*citing* **Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.**, 829 F. Supp. 62, 66-67 (S.D.N.Y. 1993)).  Defendants mention some of the names of the Attica defendants, but fail to assert how the Attica defendants would be inconvenienced. Merely naming defendants from the transferee district does not satisfy defendants' burden for this motion.  *See* **id**. (refusing transfer where movant had simply stated that all the witnesses were located elsewhere).  Further, defendants do not provide information regarding evidence, and they do not state how the witnesses they intend to call would be burdened by this claim being litigated in the Southern District.  *See* **Nabisco, Inc. v. Brach's Confections, Inc.**, 2000 WL 1677935, at *2 (S.D.N.Y. Nov. 8, 2000) (finding a listing of witnesses along with a statement of what their testimony will generally cover is sufficient to meet the moving party's burden); **Herbert Ltd. P'ship v. Elec. Arts**, 325 F.Supp. 2d 282, 287 (S.D.N.Y. 2004) (moving party is "obligated" to present a list of witnesses who would be inconvenienced by the current location in order to support motion for change in venue).  Defendants have not met their burden in showing that transfer is proper and their motion to transfer venue should be **DENIED.**

# IV. CONCLUSION

In summary, defendants' motion to dismiss pursuant to PLRA 42 U.S.C. § 1997e(a) exhaustion requirements should be **DENIED**. Defendants' motion to dismiss the conspiracy and retaliation claims should be **DENIED**. However, defendants' motion to dismiss Benitez's deprivation of property without due process claim and Eighth Amendment medical indifference claim should be **GRANTED**.

Defendants' motion to dismiss Benitez's personal involvement claims should be **GRANTED** with respect to those supervisory defendants listed herein, but **DENIED** as to defendants Schmitt and Keyser.

Defendants' motion to dismiss Benitez's procedural due process claims should be **DENIED** with respect to the claims relating to a lack of notice, refusal of witnesses and evidence, and a lack of assistance. The defendants involved are not entitled to qualified immunity on those claims. However, defendants' motion is **GRANTED** as to the due process claims of refusal to allow Benitez to attend a Tier II hearing, delay in completing a hearing, and a biased hearing officer.

Finally, defendants' motion to transfer venue should be **DENIED.**

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard Conway Casey, 500 Pearl Street, Room 1350, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the

33

District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**,

474 U.S. 140, 150 (1985); **Small v. Sec'y of Health and Human Servs.**, 892 F.2d 15, 16 (2d Cir.

1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: February 16, 2006**
**New York, New York**

Respectfully Submitted,

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

Plaintiff, *Pro Se*
Henry Benitez, DIN 97-A-2553
Upstate Correctional Facility
P.O.Box 2001
Malone, NY 12953

Counsel for Defendant
Benjamin Lee
Assistant Attorney General
120 Broadway
New York, NY 10271

34